4/2/2015

Judge Charles R. Breyer
U.S. District Court
Northern District of California

To William J. Portanova
400 Capitel Mall, Ste 1100
Sacramento, Ca 95814

RE: US v. Frederico Buenrostro Jr.
      Case 13-CR-00169CRB

Dear Judge Breyer:

Please accept this letter as a request that
the court exercise leniency in the sentencing
of Fred Buenrostro scheduled for May 13, 2015.

My name is Lou Abundis. I live in Pacific Grove,
Calif. I have just retired from Santa Clara
Valley Transportation Agency after serving 37 years
as an operator and dispatcher. I graduated
from Pepperdine University in 1970. I first
met Fred at college in 1968 while pledgeing
Tau Phi fraternity. We have had a friendship
ever since those early years. We have
shared a lot of good memorable occasions
together especially six years ago at my

sixty birthday party. He has always been kind, gracious and courteous to myself & family. I feel his recent indiscretions is an aberration of his character. He has always had a moral compass until now. His character suffered a moment of weakness and he strayed from his better judgement. He is ashamed and remorseful and wants to do the right thing.

I hope the court can exercise compassion along with justice that will allow Fred a second chance in life.

Respectfully, Lou Abundiz 31 year retired civil servant.

April 19, 2015

The Honorable Charles R Breyer
U.S. District Court
Northern District of California

c/o William J. Portanova
400 Capitol Mall, Suite 1100
Sacramento, CA  95814

RE:     U.S. v Federico Buenrostro Jr.
        Case No. 13-CR-00169 CRB

Dear Judge Breyer:

I am writing concerning the above-referenced case, and my friend Fred Buenrostro.

I currently teach mathematics at North Valleys High School in Reno, NV.  I live in Truckee, CA, where I settled many years ago, after doing pharmaceutical research in the Bay Area.  Educationally, I have Bachelor's degree in Zoology from the University of California at Davis, graduate studies at San Jose State University, and a Master's degree in Education from Western Washington University in Bellingham, WA.

I was working at Squaw Valley ski area as a ski instructor when I first met Fred.  I hold a Level 3 certification, and occasionally worked with Fred, developing his instructional skills.  At the time, he was working in the Gray Davis administration.  Fred and I enjoyed skiing together, and I enjoyed learning from Fred about government processes as we rode the chairlift.  When Fred was appointed CEO at CALPERS, he displayed even more passion for the job.

Fred and I continued to talk when he was charged in this case, and communicated in person, as well as by email.  The day before Fred's guilty plea in your court, he told me in an email "I'm going to plead guilty tomorrow.  It's the right thing for me to do."

Since that day, I have watched Fred go through a personal purgatory.  He has accepted his transgressions, and is truly sorry for his actions.  As his friend, it has been painful to watch.

This letter is not meant to excuse Fred's actions.  However, he has dedicated a long and energetic career to the state of California.  I am asking you to consider any possible leniency when sentencing is done in this case.

Sincerely,

Frank Aldridge

Frank Aldridge

John C.J. Barnes, Esq.
4213 American River Drive
Sacramento, CA  95864

April 15, 2015

The Honorable Charles R. Breyer
U.S. District Court, Northern District of California
c/o William J. Portanova, Esq.
400 Capitol Mall, Suite 1100
Sacramento, CA 95814

RE: *U.S. v. Federico Buenrostro, Jr.*, Case No. 13-CR-0019 CRB

Dear Judge Breyer:

 Please accept this letter as a request that the Court exercise mercy in the sentencing of the above-named defendant ("Fred").

 I have known Fred since I was a toddler.  I remember Fred and my Dad studying for law school together at our house in Davis, and I remember them posing for pictures together under the trees at the Memorial Auditorium in Sacramento after their graduation.   Notably, it was under those exact same trees that Fred congratulated me when I graduated from law school.

 Fred has been as much of a presence in my life as my immediate family.  Fred celebrated birthdays and holidays with us.  Fred helped me with countless home projects.  Fred taught me to snow ski when I was a child, and to water ski when I was an adult.  I have never had a more patient teacher.  I still remember him helping my brother and I navigate down a particularly difficult pitch at Granite Chief at Squaw Valley, the whole time yelling "there you go, you guys are good skiers!" over and over.  It is one of the indelible moments of my childhood.

 When my brother, a U.S. Marine, left for his first tour of duty in Iraq, Fred traveled with the family to Camp Lejeune, North Carolina to see him off.  Fred was very busy at the time, but he still took the time to be there.

One of my favorite Fred stories is the saga of his kitchen remodel.  I believe it started in the 1980s and continued into the mid-2000s.  Fred was doing all of the work himself because he is stubborn that way.  I cannot remember a time when I went over to his house on 33rd street and there wasn't a sink sitting in living room, bare plumbing sticking out of the walls, or plywood on the ground.  Mind you, this was not an extravagant kitchen – it was probably a 10x7 galley kitchen.  But that little kitchen provided me and my merciless brother countless opportunities to give Fred a hard time.

Fred and I talked politics all of the time.  When I graduated from college, it was Fred who suggested that I apply for the Jesse Unruh Fellowship at the California State Assembly.  I was accepted, and spent a year

working for the Human Resources Committee, where I focused on foster care and adoption issues.  I frequently called on Fred for advice.  His advice always reflected his genuine desire to get things done in government, and never came from a place of cynicism.

 When Fred was appointed to be the CEO of CalPERS, it did not come as a huge surprise to me.  Fred had been a lifelong public servant.  His knowledge of the inner workings of state government, and in particular the retirement system, were probably unmatched in California.  The entire time that he was with CalPERS, I know that Fred was working tirelessly to improve the state retirement system.

 I was genuinely shocked and disappointed when I learned of the conduct that led Fred to plead guilty in this case.  This was not the Fred that I knew and loved.  I don't know what caused Fred to do what he did, but I know that it was completely out of character.  I have spoken with him on several occasion since he revealed the true facts, and I must say that he is a different person from the Fred that I knew.  He has truly been humbled and humiliated.  His expressions of remorse are sincere and unequivocal.

 I cannot see how incarcerating Fred at this point will serve any genuine public purpose.  He has lost his position and station in the community.  His employment prospects are virtually non-existent now, and will become even more so if he is incarcerated.

 In conclusion, I would ask the Court to consider the facts of this case in the context of the entirety of Fred's life, career, and friends and family.  He has already suffered a crushing blow, and the turn of the key will do nothing to enhance that punishment.

 Sincerely,

John Barnes

March 22,2015

The Honorable Charles R. Breyer
U. S. District Court
Northern District of California

c/o William J. Portanova
400 Capitol Mall, Su 1100
Sacramento, CA 95814

RE:   U.S. v. Federico Buenrostro Jr.
      Case No. 13-CR-00169 CRB

Dear Judge Breyer:

Please accept this letter as a request that the court exercise leniency in the sentencing of Fred Buenrostro, scheduled for May 13, 2015.

I am Fred's younger brother Jim. I am retired from 36 years of service with PG&E as a communication technician, a technical specialist, and a first line supervisor.

I have (obviously) known Fred all my life, and looked up to him as a role model until he met up with Mr. Villalobos. Prior to Mr. Villalobos influence I was present when, as C.E.O., he worked on finance programs for CalPERS to secure construction loans for low income housing, and other programs that I was proud to know he was associated with. I believe the reasons behind Fred's current problems are no longer a factor since Mr. Villalobos' passing. I know Fred has upheld his pledge to assist the prosecutor fully and completely as evidenced by Mr. Villalobos' finding no way to avoid justice other than suicide.

I know Fred has a great deal of experience assisting the underprivileged members of our society to find housing, and hope you can find a way for Fred to try to redeem himself as much as possible. I don't think an extended period of incarceration would be in the best interest of our society, but rather some form of supervised community service if that is possible.

I know Fred has already lost his standing in his profession, most of his financial assets, and most of his self-respect. He has indicated to me that his actions were done out of a sense of indebtedness to a "friend" (now seen as a predator) who had assisted him earlier.

I have observed that Fred derives a great sense of accomplishment by teaching skiing. This allows him to help others to achieve their own sense of accomplishment and fulfillment. As you can guess, this is not done for any great financial reward, but more for the personal satisfaction of helping others to learn a skill.

In short, I know there is no way for society to be further harmed by Fred, and I hope you and the prosecutor can find a way to help both society and Fred to find a better future.

Thank you for your time. Sincerely,

Jim Buenrostro

MARY R BUENROSTRO
503 Grandview Ave
Dallas, Texas 75223

April 17, 2015

The Honorable Charles R. Breyer
U.S. District Court
Northern District of California

c/o William J. Portanova
400 Capitol Mall, Suite 1100
Sacramento, CA  96814

Re: **U.S.  v. Federico Buenrostro Jr.**
    Case No. 13-CR-00169 CRB

Dear Judge Breyer:

Please accept this letter as a request that the court exercise leniency in the sentencing of Fred Buenrostro Jr., scheduled for May 13, 2015.

I am oldest of Fred's three sisters, just 10 months younger than Fred.  The family moved from Dallas to Sacramento in 1958.  I returned to Dallas in 1972 to care for our elderly Grandparents and Great Aunt.  After completing a bachelor's degree at University of Texas at Arlington, I have had a varied business career in loss prevention, technology services, human resources and supply management.   I am currently a Certified Procurement Manager member of the Institute of Supply Management, but was 'downsized' last year, and not currently working.

Our parents had 7 children in 10 years and for a great deal of that time, our father was unemployed.  With a family of 9 in chronic financial crisis, our father required Fred, the oldest, to earn wages far earlier than other children in our blue collar neighborhood. Fred took on his first paper route at age 12.  He delivered morning papers starting at 4:00 AM and in later years had an afternoon/evening route as well.  However, Fred was not allowed to spend the money he earned, because the funds were needed for house payments, utilities and food.  In addition to our

family's chronic financial problems, our father engaged in domestic violence and abuse of every type imaginable.

Fred left for college at age 17 primarily to leave the dysfunctional environment, and he never lived with the family again.  Because of our father's rigid religious beliefs, the only college Fred was allowed to attend was a private religious university affiliated with our church.  He supported himself after age 17 and paid for all his living and education expenses, by working, and paying off education loans.

As the oldest child in our family, I believe Fred felt that his principal contribution to our family was financial.  He has been supportive whenever any sibling experienced a fiscal crisis.  Fred made a significant monthly contribution to supporting our father for more than a decade before Dad's death, in 2013.  In addition, he paid off some of our father's credit card debts and monthly bills.  Fred also made frequent trips to Dallas to provide the much needed emotional support for Dad.  I do not however, believe these facts in any way excuse his choices.

In our conversations, I know that Fred realizes and deeply regrets the decisions he has made.  He is depressed about the perception that his actions may have harmed the employees, retirees and stockholders of CALPERS.  He is also keenly aware of his personal loss of reputation, trustworthiness, and the result appears to negate the many positive accomplishments he achieved as the CEO of CALPERS.

I request that the court exercise leniency in sentencing Fred Buenrostro Jr. next month.   Thank you for considering this request and allowing me to provide my views.

Sincerely,

Mary R. Buenrostro, C.P.M.

HAVEN P. COURTNEY II
PO BOX 594
AUBURN, CA 95604

April 1, 2015

The Honorable Charles R. Breyer
U.S. District Court
Northern District of California

C/o William J. Portnova
400 Capital Mall, Suite 1100
Sacramento, CA 95814

RE:    U.S. v. Federico Buenrostro Jr.
       Case No. 13-CR-00169 CRB

Dear Judge Breyer:

Please accept this letter as a request for leniency for my friend, Fred Buenrostro.

I met Fred as a fellow ski instructor in the late 1990's. As a part time ski instructor and full time attorney for State Compensation Insurance Fund, Fred and I have many things in common. Fred helped me make smart decisions about my pension and other investments. He also gave me great advice about interviewing when I first applied for the State job at State Compensation Insurance Fund.

I have spent many days with Fred skiing and camping. The Fred from 10 years ago was confident and outgoing with a quick wit. Nowadays, Fred is reserved and depressed.

On a camping trip last year, Fred admitted that he'd made some serious mistakes. He said he'd be entering a guilty plea in a few days, and not to be surprised if it was in the news. He was embarrassed, sad and frightened, but said it was time to do the right thing.

In conversations with Fred, it's clear that he is remorseful for what he did. He's told me "I can't believe I let Al manipulate me like that, I should have known better."

I recognize Fred has made serious mistakes in committing fraud and accepting bribes. I believe Fred has already suffered serious punishment. On a strictly financial basis, I'm sure he's lost more in income and attorney fees then the money he accepted as a bribe. On an emotional level, he punishes himself on a daily basis for what he's done.

Please consider a lenient sentence for Fred.

Haven Courtney



SQUAW VALLEY

# SKI & SNOWBOARD
## SCHOOL

4/17/2015

The Honorable Charles R. Breyer
U.S. District Court
Northern District of California

c/o William J. Portanova
400 Capitol Mall, Su 1100
Sacramento, CA 95814

RE:    U.S. v. Federico Buenrostro Jr.
       Case No. 13-CR-00169 CRB

Dear Judge Breyer:

Please accept this letter as a request that the court exercise leniency in the sentencing of Fred Buentrostro, scheduled for May 13, 2015.

My name is Elianne Furtney, manager of the Squaw Valley Ski & Snowboard School, and Fred has worked for me as a part time ski instructor for the past four seasons. Additionally I have known him as a co-worker for the better part of the last 20 years. I have always known Fred to be extremely humble and accommodating at work. When I first heard of his indiscretions I was very surprised, and after talking to him last fall about his conviction and the events leading up to it, I had no compunction about allowing him to remain part of our team. I believe Fred to have a very clear idea of the mistakes he made and a commitment to behave with perfect propriety in the future. As far as my interactions with him over the years I have never observed anything but professional and respectful behavior from Fred, both to our guests and his co-workers.

Sincerely,

Elianne Furtney
Manager
Adult Ski & Snowboard School
Squaw Valley
P.O. Box 2007
Olympic Valley, CA 96146

# Winston H. Hickox

## 700 Walnut Glen Court

## Sacramento, CA 95864

April 26, 2015

The Honorable Charles R. Breyer
U. S. District Court
Northern District of California

c/o William J. Portanova
400 Capitol Mall, Suite 1100
Sacramento, CA 95814

RE:   U.S. v. Federico Buenrostro Jr.
       Case No. 13-CR-00169 CRB

Dear Judge Breyer:

Please accept this letter as a request that the court exercise leniency in the
sentencing of Fred Buenrostro, scheduled for May 13, 2015.

Let me take a moment to share with you a few elements of the history of my
personal relationship with Fred Buenrostro.

I've known Fred for nearly 30 years, dating back to early 1987 when I served
as a senior advisor to then State Controller Gray Davis, assisting with his
transition into the office of State Controller.  At that time Fred worked for the
Office of the State Treasurer.

When I returned to the private sector in the fall of 1987, I joined a local firm
that had been hired as the first Real Estate Advisor to CalPERS, FIA Associates.

I often interacted with Fred in his role with the State Treasurer's Office, followed by his tenure in a similar role with the State Controller's Office.

Both the State Treasurer and the State Controller served as members of the Board of Directors of one of our firm's clients, CalPERS, and Fred served as their principal representative on that Board.  During this time, from 1987 until 1996, when I had fairly frequent interactions with him, I found Fred to be bright, energetic, extremely ethical, and a very effective and loyal representative of the Treasurer and Controllers he served.

From 1999 to the fall of 2003 I served as the Secretary of the California Environmental Protection Agency.  During that time one of my initiatives involved an effort to convince CalPERS and CalSTRS that the "environmental performance" of the public companies in their portfolios (e.g. energy efficiency, pollution prevention, adoption of clean technologies, etc.) should be part of the funds' evaluation of the company's performance, as well as their future potential to provide positive investment returns.

Treasurer Angelides, and Controller Westly, along with the fund's CEO Fred Buenrostro, were very instrumental in helping to develop this concept, which eventually led to the CalPERS "GreenWave Investment Initiatives".  What stood out in terms of Fred's contribution was his focused intent on insuring that the fund rely upon the best independent thinking regarding these initiatives, as they carefully evaluated the opportunities they presented, while also fully analyzing the risks.

In the summer of 2004 I joined the Investment Office at CalPERS to assist with the full implementation of these initiatives, now known as the CalPERS "Environmental Investment Initiatives".  In 2006 I returned to the private sector, when I joined my current firm California Strategies.  During my time at CalPERS I too worked for then CEO Fred Buenrostro, who I found to be one of the hardest working executives I've ever encountered in either the public or private sector, in possession of a keen intellect, who exhibited the highest level of responsibility, and demonstrated a clear sense of, and commitment to, the fiduciary responsibilities associated with his position as CEO.

Over the past few years, I've spent sufficient time in conversation with Fred to understand and appreciate the degree to which he has transitioned his thinking in terms of recognizing the terrible mistakes in judgment that have

led to this outcome.  I have observed him face the consequence of his actions with remorse and a full recognition and acknowledgement of his transgressions.

It is still hard for me to come to grips with what he did.  This episode in his life is so out of character that I've had a difficult time understanding it.  However, my sense of loyalty, to this valued friend, causes me to conclude that I must appeal to you to take into account the observations I've presented here regarding the Fred Buenrostro I've known all these many years.

This experience has changed him, there's no doubt about that.  I can't imagine going through what he has endured.  I respect the manner in which he has faced the consequences of his actions, and the regret he has expressed.

This represents the basis for my appeal that you exercise, to the fullest, your judicial discretion with regard to his sentencing, and grant him leniency.  Please know that I have faith that your judgment, in this most important matter, will be wise and considered.


Sincerely,

Winston H. Hickox

March 31, 2015

The Honorable Charles R. Breyer
U.S. District Court
Northern District of California

c/o William J. Portanova
400 Capital Mall, Suite 1100
Sacramento, CA 95814

Dear Judge Breyer,

Please accept this letter as a request for the court to consider leniency in the
sentencing of Fred Buenrostro, scheduled for May 13, 2015

My name is Bryan Martel, I am an engineering graduate from the University
of California Berkeley, I've worked for Bechtel and Dow Chemical, I was the
founder and CEO of an environmental engineering firm, and the founder of
an environmental consultant firm overseeing the efficacy of CALPERS
investments in clean energy technologies. I also have taught skiing for many
years at Squaw Valley. I'm married to Erika, who knows Fred well, and we
have two young kids who nicknamed Fred "Freddie the fish."

I have known Fred for nearly twenty years now and I consider him a good
and caring friend. We have worked together as ski instructors on the
weekends at Squaw this whole time and for about five of these twenty years I
had the pleasure of also working with him while he was at CalPERS.

About Fred: I have only known Fred to care about others and not EVER put
himself first. For years I have seen Fred working his tail off to help beginning
skiers learn how to make their first turn, slow down and stop, and then help
them get back on the lift. This is darn hard work where you have to
physically struggle to help your student get up off the snow and back on their
skis, and do it over and over again in freezing weather or hot sunny days.
Fred has done this year after year because he simply enjoys helping people,
especially in a sport he loves.  After a long day on the slopes Fred would go
out with the guys and he would order a Bud...just a simple beer. When Fred
became the CEO of CalPERS he still drank Bud. Fred never told folks he
was the CEO of CalPERS. It didn't matter to him to tell folks.

I also had the pleasure of seeing Fred work at CalPERS and he was the same there as he was up on the mountains. He cared about the people. He told me many times his goals were to help improve diversity in the work place at CalPERS, to move healthcare initiatives forward at CalPERS, and to initiate and ensure that the environmental programs at CalPERS were not shallow. He talked about these issues all the time, up on the chair lifts, at leadership conferences, in board meetings, and in the press. He cared about these issues and how they affected people. I was honored to be able to help CalPERS and Fred on the environmental initiatives and I was fortunate to see him receive one particular award from Mikhail Gorbachev for environmental leadership. When Fred got up to the podium all he had was thanks for all the people who helped him and he meant it. Fred was not motivated by the spot light, but by helping others get important things done. Yes, Fred had a lot of power at CalPERS, but he always used it for good, and I never saw him abuse it. As a matter of fact, Fred wouldn't ever receive a token Christmas or birthday gift from me, not even out of friendship. And he NEVER asked for a favor. It was important to him to be a good friend and to care about his friends. There were a lot of folks around CalPERS who cared only about "who" he was, but these people didn't care about him. I don't think Al Villalobos cared for him and I strongly suspect he took advantage of Fred's painful divorce to try to benefit from who Fred was at CalPERS. I think Fred took the money from Villalobos because he was financially crippled from a contentious divorce and Villalobos offered to help him out. Fred has never told me about this, but this is what I think happened. Fred made a stupid decision and deserves to have been charged with a felony for breaching his fiduciary duty of trust, and I told Fred this after I read it in the paper. He sadly agreed his felony charge was deserved. I told Fred I had only known him to be a wonderful steward of the people of California and though he had made one terrible mistake, I still know him to be a selfless public steward and caring person. I know Fred well enough, so I can forgive him, but for others who don't know him well, for others who want to trust our leaders, I don't know how they can understand enough to forgive him. I suppose that's why we need to write these letters to you, to help you understand the man behind the mistakes, so you can judge and sentence the best you can.

So to the point of leniency, I'm certainly no expert here, but I suppose there are three important issues when sentencing someone: one is to hold someone accountable for their actions by punishing them, two is to rehabilitate them, and three is to send a message to deter others from repeating the offense.

With regard to punishing Fred, I think he has been punished enough, he is ruined financially, he's lost his house, his cabin, and he now sleeps in his truck-camper to teach skiing, and most painfully, he will never be able to work again in his field and help people at scale.

As for rehabilitation, Fred isn't ever going to be in a position to violate the trust of the people, so this is a moot point. I do hope at some point he will be brave enough to share his experiences in writing so others can learn to avoid the mistakes he made.

And as for deterrence and the message you send when you sentence Fred, I think it's important to send a signal to those leaders who would violate their fiduciary duties of trust. They need to know there will be serious consequences when they damage our beliefs that social systems can work. But I also hope you will consider the tremendous service Fred provided to CalPERS' constituents, to the underserved, and to the environment while he was in office. He worked hard to make a contribution, and his reward was always the pleasure of serving others.

Respectfully,

Bryan Martel

If valuable, I would more than happy to come in and talk with you.

# MARY C. McGUIRE

1613 Caramay Way
Sacramento, CA 95818
916-548-0182

April 6, 2015

The Honorable Charles R. Breyer
United States District Court
Northern District of California

c/o William J. Portanova
400 Capitol Mall, Suite 1100
Sacramento, CA 95814

RE:   U.S. v. Federico Buenrostro Jr.
       Case No. 13-CR-00169 CRB

Dear Judge Breyer:

Please accept this letter as a request that the court exercise leniency in the sentencing of Fred
Buenrostro, scheduled for May 13, 2015.

I have known Fred for well over 35 years. I first met him when I went to work for the State of
California by day and attended McGeorge School of Law by night. Fred was my mentor during those
tough years, showing me the ropes both at work and at school. He was immensely helpful to me and
critical to my success during that period in my life.

We have stayed friends all these years, even though I moved away from the area for a prolonged period
of time. Since my return to Sacramento, Fred and I would occasionally get together to catch up on all
the happenings in our lives. He has always been kind and respectful to me, helpful with whatever
projects around my house I might have asked his assistance with, and just generally, been a good and
devoted friend.

Thus, I was saddened to learn about the charges against Fred and even more saddened to learn of his
confession. I have been in touch with Fred throughout this ordeal and I see him now as a changed man.
He is humble and contrite. He appreciates the magnitude of his actions and the impact it has had on so
many people. It is clear to me that these past actions will positively affect his future course of behavior.
I believe he will live out his days with a renewed dedication to the law and what is just. I also do not
believe that incarceration will have any positive effect on Fred. I believe the shame and humiliation that
he has brought on himself by his actions and their fallout will forever be the most serious "sentence" he
could receive.

The Honorable Charles R. Breyer
United States District Court
Northern District of California

Thus, I ask you to exercise the utmost leniency in sentencing Fred Buenrostro next month.  Thank you.

Sincerely,

Mary C. McGuire

MCM:ds

4/8/2015

The Honorable Charles R. Breyer
U.S. District Court
Nprthern District of California

c/o  William J. Portanova
400 Capitol Mall,Suite 1100
Sacvramento, CA,95814

Re: U.S. vs.  Federico Buenrostro

   Case No. 13-CR-00169 CRB

Dear Judge Breyer:

*Please accept this letter as a request that the court exercise leniency in the sentencing of Fred Buenrostro, scheduled for may 13, 2015*

My name is Ronald R. Phillips an American ex-patriot living and working in Auckland New Zealand. I hold a current California Marriage and Family Therapist Licence. and have worked for the last twenty years in a tertiary mental health clinic in South Auckland; I make my living assessing the veracity of people's words, and therefore feel qualified to make comment.

 My wife and I founded and ran( 13yrs) Creative Alternatives inc. a large residential treatment facility for societies children (Stanislaus County). CA presently has 277 employees and works with 450 children from counties all over California. My therapeutic work there and here in New Zealand is world recognized. www.tsi.co.nz.  Additionally, I was Hughson California City councilmen elected to two terms. I have a BA from Pepperdine University and a Masters degree (Psychology) from the University of San Francisco.

I have known Fred well since 1968. I know him as a humble, hard working genuine guy.  At a recent fraternity reunion I had an in depth discussion with Fred and quite naturally the topic focused on his predicament.  He owned responsibility for his actions admitted his guilt and was empirically remorseful.  He had nothing to gain by his honest disclosure; he did not try to mitigate responsibility he took it all.  I found it interesting that he did not try and rationalize, project or deny. He just fronted, "I screwed up" moments of madness.

Judge Breyer  I urge you to show mercy and leniency toward Fred.  He has already served his sentence; in fact he has served years of stress and angst. I believe he co-operated to a very high degree making the States case a 'slam dunk'.

Please allow this good man who has learned his lesson a chance to again contribute his vast skills to the betterment of society.

Without reservation I support Fred Buenrostro.

Thank you for consideration

Regards,


Ron Phillips, MA MFT

# Sierra

# Sotheby's
## INTERNATIONAL REALTY

**Rick Raduziner**
Broker

P.O. Box 1316
Tahoe City, CA 96145
c 530.308.1628
Rick@TahoeRick.com
www.TahoeRick.com

4/25/15

The Honorable Charles R. Breyer
U.S. District Court, Northern District of California

C/O William J. Portanova
400 Capital Mall, Suite 1100
Sacramento, CA  95814

RE: U.S. v. Federico Buenrostro Jr.   -   Case No. 13-CR-00169 CRB

Dear Judge Breyer,

Please accept this letter as a formal request that the court please exercise leniency in the sentencing of Mr. Fred Buenrostro scheduled for May 13, 2015.

My name is Richard Raduziner.  I have been living at Lake Tahoe for the past 26 years after I graduated from Western State Colorado University 1987. I have been a real estate broker practicing in this area since 1989 and concurrently have been a ski instructor (Staff Trainer) at Squaw Valley Ski Area.

I met Fred nearly 20 years ago at Squaw Valley.  He joined the ski school after being a volunteer National Ski Patrolmen.  As his ski instructor trainer, I watched Fred blossom into a very good skier and become an excellent instructor.  When watching Fred teach on the ski hill, it is quite apparent the personal connection that he creates with his clients.  He challenges them to improve while keeping the learning environment safe and fun.  He passionately spreads the joy of skiing with others. He enhances other people's lives.  Off the ski slopes he has created many sincere friendships with his colleagues, my wife Jill and I included.  In fact, Fred even has a ski school nickname.

Over the past several years, I have followed the papers and the accusations that have been made by the CA Attorney General.  I have also witnessed how difficult these tumultuous times have worn on Fred.  He has always been humble about his profession and status.

Having known Fred for nearly 20 years it's hard to see a public benefit of incarcerating him.  It's difficult to imagine the consequences that Fred now faces and how it will affect him.  He has suffered so much personally and professionally over these past few years.

In closing, I respectfully request that you consider a lenient sentence that allows Fred to continue helping other people.  How can the California public benefit from your decision?

Respectfully Submitted,

Richard Raduziner

April 20, 2015

The Honorable Charles R. Breyer
U.S. District Court
Northern District of California

c/o William J. Portanova
   400 Capitol Mall Su 1100
   Sacramento, Ca 95814

Re: U.S. v Frederico Buenrostro Jr
   Case No. 13-CR-00169CRB

Dear Judge Breyer

I am writing to request that leniency be considered in the sentencing for this matter before the court. I am personally convinced that Fred is fully aware and accepts responsibility for his actions. If I was not convinced, there is no way that I would be requesting leniency in his sentence. My conversations with him have not involved any trace of him blaming someone else for his actions and the remorse he feels is genuine. The shame of those actions on his personal and family life are definitely his deepest regret. Fred truly realizes that the person responsible is looking back at him in the mirror every time he shaves.

I have known Fred since 1968 and must state that the matter before the court was not at all part of a pattern in his personal and professional life. It was a human failing which cannot be excused or shifted to someone else. During my professional career in building a national company, I found Fred's counsel and advice to be trustworthy and valuable. I would hope the court could find some way for Fred to contribute to in lieu of straight incarceration.

Thank for your consideration,


Sincerely,


Taron Reeves
President, Reeves-Strassburg, Inc.



SHORES OF HOPE

December 2, 2015

The Honorable Charles R. Breyer
U. S. District Court
Northern District of California
c/o William J. Portanova
400 Capitol Mall, Su 1100
Sacramento, CA 95814

RE:     U.S. v. Federico Buenrostro Jr.
        Case No. 13-CR-00169 CRB
Dear Judge Breyer,

Please accept this letter as a request that the court exercise leniency in the sentencing of Fred Buenrostro, scheduled for May 13, 2015. My name is Sergei Shkurkin. I am the Chief Operations Officer of the Shores of Hope, a nonprofit providing social safety net services in West Sacramento. We operate a child care center for children 3 to 5, housing and services for homeless families, transportation for seniors and disabled, and youth activities at low income housing.

Fred has been working at the Shores of Hope as a volunteer since September of this year. I have been his direct supervisor. Fred has provided me much needed and very valuable assistance in some of the more complex administrative work required of our agency.

He has been particularly helpful in the management analysis and fiscal turnaround of our transportation program. This program transports mentally handicapped adults to work sites, addicted mother with their babies to drug treatment, as well as seniors in our community. Our funding sources for these programs have stringent administrative requirements, yet do not provide funding for adhering to these requirements. Fred's willingness to do that work over the last few months has made it possible for us to keep the program open and in compliance; benefiting over 60 disabled and elderly clients every day, and helping mothers to stay clean and sober. He has been training the program's staff and working to develop ongoing systems for working with these requirements.

# SHORES OF HOPE

I know that Fred has not worked in our sort of agency in the past, and was probably not quite sure about being here in the beginning. Over the last few months I have seen him grow to understand and care about our values and mission of helping the neediest among us. My average staff person is young, from the low income neighborhood we work in, and in most cases was a client themselves at one time. He has become a teacher and a mentor to a number of them, patiently guiding them through the wonders of the paperwork that our funding requires of us. He is making a difference here, and I see that it agrees with him.

A core value of our agency is working with people who need a second chance in life. I have spent an entire career observing the actions and attitudes that indicate someone will value and honor that second chance, by changing the direction and purpose of their lives. I see in Fred's actions and attitudes someone who will value and honor a second chance, and change the direction and purpose of his live. I ask that you give him that second chance.

Sincerely,

Sergei Shkurkin, Chief Operations Officer

7/9/2015

The Honorable Charles R. Breyer
U.S. District Court
Northern District of California

c/o  William J. Portanova
400 Capitol Mall, Suite 1100
Sacramento, CA, 95814

Re: U.S. vs.  Federico Buenrostro

Case No. 13-CR-00169 CRB

Dear Judge Breyer:

I am writing this letter to request that the court show leniency in the sentencing of
Federico Buenrostro.

I have known Federico, or Fred as he is commonly known, since 1968 when we were
undergraduates at the Christian college Pepperdine University. The Fred that I knew
then, and know now, is a person of outstanding moral character. From what I've
personally witnessed he was someone who displayed values such as caring, concern
and truthfulness well beyond the ordinary. He is one of those rare people who would
always "give you the shirt off his back"; always concerned less with his own self then
others. We all make mistakes in our lives, and I've heard Fred say that he did mess up
badly. In my opinion, from what I've seen, he is absolutely and totally remorseful for his
actions and has admitted such. I know he has made a mistake but I hope that the court
sees fit to show leniency.


Sincerely,

Mark L. Tierno



TOWNSEND
RAIMUNDO
BESLER
& USHER

1717 I Street
Sacramento
California 95811

916.444.5701
916.444.0382 fax
trbu@trbu.com
www.trbu.com

March 23, 2015

The Honorable Charles R. Breyer
U.S. District Court
Northern District of California
c/o William J. Portanova
400 Capitol Mall, Suite 1100
Sacramento, CA 95814

RE:  U.S. v. Federico Buenrostro, Jr.
Case No. 13-CR-00169 CRB

Dear Judge Breyer:

Please accept this letter as a request that the court exercise leniency in the sentencing of Fred Buenrostro, scheduled for May 13, 2015.

I am David Townsend.  I am a political and public affairs consultant.  My company, Townsend Raimundo Besler & Usher, has been conducting candidate and ballot measure campaigns in California since 1982.  I have a Bachelor and Master degrees from California State University, Fresno, and I attended McGeorge Law School for one year.  I served as a chief of staff and committee consultant in the California Senate for nearly six years.  It was during those years in the Legislature that I met and became friends with Fred.

In the late 1970s a small group of professionals working in state government leased a ski cabin in North Shore, Lake Tahoe.  After a few years, we purchased a ski cabin together.  Fred was one of the partners.  Fred, Jim Burton and I continued that partnership in the cabin for over twenty years.

As my partner in the Lake Tahoe property, Fred was honest, fair and always could be relied upon to do more than his fair share on any project.  He took much of the responsibility for maintaining and operating the cabin.  He bought supplies and equipment.  He oversaw repairs, a new roof, retaining wall and much more.  He managed the money on all these projects and was always completely honest.

I have known Fred for over 35 years.  We have skied together, worked on our cabin together and known each other very well.  I was at his first wedding and he attended mine 29 years ago.  I often interacted with Fred in a professional capacity as politics in Sacramento is a very small world.

Page 2

I have always known Fred to be reliable, a hard worker and someone who takes his responsibilities very seriously.  He is intelligent and technically very skilled.  Working with him on our cabin, I used to say that Fred is so talented he could build a house with a hammer, saw and a screwdriver.  He had a good sense of humor and lots of good friends.

When I first heard of Fred's involvement with the scandal, I was confident that he must have made some mistakes in judgment.  When the facts were revealed in the press, I was shocked.  Fred never seemed to care about having lots of money or a high-living lifestyle.  The idea of Fred taking cash in cardboard boxes was something that took days for me to even comprehend.

When I spoke with Fred about his actions he was embarrassed, humbled…a broken man.  This has destroyed his reputation, cost him many of his friends and isolated him to live not with all the accomplishments of his long and successful career, but to look every day in the mirror and see a fallen man.  He will never again be able to look people in the eye without wondering if they know that he is a criminal.  His life ahead is his punishment.

Even someone who only attended law school for one year knows, "you do the crime, you do the time."  Hardened violent criminals need to be put in prison not only for their crimes, but to protect members of society.  Fred did bad things, but he is not a bad person.  He has already suffered more than any of us can imagine with the public shame he has brought upon himself.  Should he go to prison for his crimes?  Yes, of course.  But ultimately the time Fred spends in prison is not his real punishment.  It is the time he spends the rest of his life living with what he has done.

Your honor, I ask you to consider that in pronouncing your sentence of time in prison for Fred that you take into consideration the suffering and punishment Fred as already endured.  He is not a young man.  His career is over.  His reputation is destroyed.  A shorter sentence just might give Fred a chance to return to society and make amends by doing good work in the community.  In that way, maybe some good might come of this terrible tragedy.

Thank you for reading my letter and giving it your consideration.

Sincerely,

David J. Townsend

503 Grandview Ave
Dallas, Texas 75223
**April 7th, 2015**

The Honorable Charles R. Breyer
U.S. District Court
Northern District of California

c/o  William J. Portanova
400 Capitol Mall, Suite 1100
Sacramento, CA 96814

Re: **U.S. v. Federico Buenrostro Jr.**
       Case No. 13-CR-00169  CRB

Dear Judge Breyer:

Please accept this letter as a request that the court exercise leniency in the
sentencing of Fred Buenrostro Jr., scheduled for May 13, 2015.

I am a career civil service Attorney (with U.S.-E.P.A., since 1976),  a graduate of
Southern Methodist University in Dallas, and a brother-in-law to Fred Buenrostro,
having married his sister Mary in 2009.   I met Fred perhaps ten years before that
date.  Fred came to Dallas regularly to visit his aging father, Fred Buenrostro Sr.,
who lived in an assisted living facility, with financial help from Fred Jr. and Mary,
and other siblings, until his death after heart surgery in June 2013.  Fred Jr.'s visits
clearly helped with some physical improvements as well as counsel.  He was
significant help in keeping his aging father on an even keel.  There were frequent
follow-up phone calls to remind Dad to 'behave' within the rules of the facility.

Fred Sr., a retired draftsman, was very proud of Fred Jr. as a "self made man" who
had put himself through college and law school, and risen to the top executive job
at CalPERS, where he successfully managed a large staff with large budgets and
major investments, and found time to serve on Ski Patrol at Squaw Valley slopes.

2

Fred Sr. delighted in recognition and accolades awarded to Fred. Jr., including his recognition as one of the highest-ranking Hispanic civil servants in the U.S., and bragged when Fred Jr. was invited to speak at conferences such as in Australia.

I have enjoyed Fred Jr.'s straightforward personality and sense of humor, and seen his dedication to both his job and his family, before and after his retirement from CalPERS.   He was very proud of what he had accomplished there, including his personal support for the Board-directed shift to more environmentally sensitive investments, and managing the various personalities of a diverse staff.

I know that Fred Jr. is thoroughly impacted by his current situation, and had 'gotten in too deep' with some questionable person(s), and admits his mistakes. I am very sympathetic to his plight, and recall my first wife's admonition to me, that I had better not get involved in politics or law enforcement, because I am a nice guy, and assume that other people are nice guys - - - and this will definitely get a man in trouble [or worse] in those fields.   I observe that Fred is also a nice guy, and may have been too trusting and less observant that he might have been.

I was pleased to see Fred, and have dinner with him, at a family wedding last month in California.  I know he is changed by his legal troubles, and is aware that he made serious mistakes.

*I request* that the court exercise leniency in sentencing Fred Buenrostro Jr. next month.   This is not a man who needs prison time to understand the errors made, but an honorably retired civil servant who has served a career in state government and presents no risk to society and others.

Thank you for this opportunity to present my observations to the court.

Sincerely,

Paul M. Witthoeft, J.D., M.P.A.

March 27, 2015

The Honorable Charles R. Breyer
U.S District of California
Northern District of California

c/o William J. Portanova
400 Capitol Mall Suite 1100
Sacramento, CA 95814

RE: U.S .v. Frederico Buenrostro Jr.
Case No. 13-CR-00169 CRB

Judge Breyer,

Please accept this letter as a request that the court exercise leniency in the sentencing of Fred
Buenrostro, on his sentencing date of May 13, 2015.

My name is Annelle Lynn Woodruff. I was born and raised in Sacramento California, and still live in
Sacramento.

I have been in retail sales most of my life. I own a small playground company, Harmony Recreation
Products. I design playgrounds, and sell equipment and site amenities. I have been doing this for ten
years. I was trained in Denmark on child development and the importance of social play for children.

I did not know Fred when he was at CalPERS. Fred and I first met through mutual friends. When I first
met Fred after my husband died, Fred helped me move out of my house. He was truly a blessing, helping
with the huge move.

As our relationship evolved I found him to be kind, caring, and emotionally supportive. We dated for
some time, and been living together for almost three years.

We started talking about his CalPERS career. I learned he was involved in some lawsuits, before his
criminal indictment.

Fred has spoken candidly about his mistakes and is very sorry about them.

I truly love him and will stand by him. He is a good man who made some mistakes.

Sincerely,

Annelle Woodruff

April 13, 2015

The Honorable Charles R. Breyer
U.S. District Court
Northern District of California

c/o William J. Portanova
400 Capitol Mall, Su 1100
Sacramento, CA 95814

Re:    U.S. v. Federico Buenrostro Jr.
       Case No. 13-CR-00169 CRB

Dear Judge Breyer:

Please accept this letter as a request that the court exercise leniency in the sentencing
of Fred Buenrostro, scheduled for May 13, 2015. Fred is my brother-in-law; I am
married to his sister, Martha Buenrostro. I am a retired legal aid attorney, having
represented low income clients in civil cases for over 33 years.

I have known Fred for 11 years. When I first met him I was impressed by his concern for
his elderly father and the many things he did for him. Fred was also a big help to his
other family members.

When the criminal investigation into his work for CAL PERS first began, Fred called my
wife and I to let us know what was happening. He was a little short on details to begin
with but soon gave us a full picture of what he had done. Fred has told me he knows he
acted without caution, in his own self-interest, and outside the law in his financial
dealing with CAL PERS.

Fred has become more open with me, being more personal and free in sharing his
thoughts, joys and values since his initial disclosure to me of his legal problems.  He
has told me that he recognizes that his actions not only were legally wrong but have had
negative consequences to his family, friends and especially to the thousands of CAL
PERS employees he was pledged to serve. Fred has shown genuine remorse, and
recognizes that his conduct was criminal. A stiff sentence will not, in my opinion, further
the cause of justice.

Very truly,

James F. Young
Attorney at Law, Inactive